# 12-0049-cr

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

RONALD BRITTON, DEVON JOHNSON, JERMEL PERINEAU,

*Defendants,*

– and –

JOSEPH GUERINO, AKA Guerino Joseph,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR DEFENDANT-APPELLANT

EDELSTEIN & GROSSMAN
*Attorneys for Defendant-Appellant*
501 Fifth Avenue, Suite 514
New York, New York 10017
(212) 871-0571

# <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................ iii

Preliminary Statement ...............................................................1

Questions Presented ..................................................................1

Statement of Facts ...................................................................2

    A.    The Trial .................................................3

    B.    Sentencing ................................................9

Argument………… ...................................................................13

    POINT I

    IT WAS ERROR TO ADMIT THE PRIOR
    CONSISTENT STATEMENTS OF JERMEL
    PERINEAU AND DEVON JOHNSON ....................................13

    POINT II

    THE SENTENCE WAS PROCEDURALLY
    UNREASONABLE BECAUSE THE DISTRICT
    COURT ERRONEOUSLY FOUND THAT THE
    ADVISORY GUIDELINE RANGE MERGED WITH
    THE STATUTORY MAXIMUM ............................................18

    POINT III

    THE IMPOSITION OF "SERIOUS BODILY INJURY"
    ENHANCEMENTS FOR COUNTS FOUR AND
    EIGHT WAS PLAIN ERROR .............................................22

i

POINT IV

THE DISTRICT COURT'S SENTENCE WAS
SUBSTANTIVELY UNREASONABLE ......................................................26

Conclusion……….. ...............................................................................................33

Certificate of Compliance ......................................................................................34

# TABLE OF AUTHORITIES

**Cases:**

Gall v. United States,
    128 S. Ct. 586 (2007).................................................................26,28

Holloway v. United States,
    2014 WL 1942923 (E.D.N.Y. 2014) .......................................................29,30

Kimbrough v. United States,
    128 S. Ct. 558 (2007)....................................................................28

Tome v. United States,
    513 U.S. 150 (1995)..................................................................14,15

United States v. Albers,
    93 F.3d 1469 (10th Cir. 1996) ......................................................17

United States v. Awon,
    135 F.3d 96 (1st Cir. 1998)........................................................17

United States v. Blackman,
    370 Fed. Appx. 860 (9th Cir. 2010) ..........................................25n

United States v. Booker,
    543 U.S. 220 (2005)..............................................................26,27

United States v. Cavera,
    550 F.3d 180 (2d Cir. 2010) ......................................................19

United States v. Chinnici,
    305 Fed. Appx. 813 (2d Cir. 2009) ............................................19

United States v. Cirilo-Munoz,
    504 F.3d 106 (1st Cir. 2007) ......................................................28

United States v. Collicott,
    92 F.3d 973 (9th Cir.1996) ........................................................17

United States v. Cotton,
    535 U.S. 625 (2002)......................................................................21,22

United States v. Crosby,
    397 F.3d  103 (2d Cir. 2005) ..................................................18,27

United States v. Davis,
    132 F. Supp. 2d 455 (E.D. La. 2001) ...........................................31

United States v. Dortch,
    628 F.3d 923 (7th Cir. 2010) ...................................................25

United States v. Egbert,
    562 F.3d 1092(10th Cir. 2009) .................................................24

United States v. Esparza,
    291 F.3d 1052 (6th Cir. 2002) ..................................................16

United States v. Fernandez,
    443 F.3d 19 (2d Cir. 2006) .......................................................27

United States v. Forrester,
    60 F.3d 52 (2d Cir. 1995) .........................................................16

United States v. Fuller,
    426 F.3d 556 (2d Cir. 2006) .....................................................20

United States v. Honken,
    378 F. Supp. 2d 1040 (N.D. Ia. 2004) .........................................31

United States v. Jeffrey,
    128 Fed. Appx. 680 (10th Cir. 2005) ..........................................17

United States v. Jimenez-Beltre,
    440 F.3d 514 (1st Cir. 2006) .................................................27,28

United States v. Lake,
    419 F.3d 111 (2d Cir. 2005) .....................................................20

iv

United States v. Lewis,
 424 F.3d 239 (2d Cir. 2005) ..........................................................21

United States v. Moreno,
 94 F.3d 1453 (10th Cir. 1996) ......................................................17

United States v. Rattoballi,
 452 F.3d 127 (2d Cir. 2006) .................................................18,27

United States v. Reeves,
 591 F.3d 77 (2d Cir. 2010) ..........................................................21

United States v. Richardson,
 521 F.3d 149 (2d Cir. 2008) ........................................................19

United States v. Sanchez,
 517 F.3d 651 (2d Cir. 2008) .................................................18,27

United States v. Sanchez-Juarez,
 446 F.3d 1109 (10th Cir. 2006) ....................................................28

United States v. Sofsky,
 287 F.3d 122 (2d Cir. 2002) ........................................................21

United States v. Tavares,
 93 F.3d 10 (1st Cir. 1996)........................................................24,25

United States v. Thavaraja,
 740 F.3d 253 (2d Cir. 2014) ......................................................31

United States v. Trujillo,
 376 F.3d 593 (6th Cir. 2004) ......................................................16

United States v. Williams,
 399 F.3d 450 (2d Cir. 2005) ......................................................21

United States v. Zapata,
 356 F. Supp. 2d 323 (S.D.N.Y. 2005) ..........................................17

**Statutes and Rules:**

18 U.S.C. § 924 ..................................................................................*passim*

18 U.S.C. § 3553 ...............................................................11,26,27,28,32

28 U.S.C. § 1291 ...............................................................................1

28 U.S.C. § 1331 ...............................................................................1

Fed. R. Evid. 801 ........................................................................14,15,17

U.S.S.G. § 1B1.1 ..........................................................................23,26

U.S.S.G. § 2B3.1 ...............................................................................23

U.S.S.G. § 2K2.4 ...........................................................................9n,10

U.S.S.G. § 5G1.1 ...............................................................................19

**Other Authorities:**

E. Cleary, <u>McCormick on Evidence</u>, § 49 at 105 (2d ed. 1972).............................14

## **PRELIMINARY STATEMENT**

Defendant-appellant Joseph Guerino a/k/a Guerino Joseph respectfully submits this brief in support of his appeal from a Judgment of the United States District Court for the Eastern District of New York (Hon. Eric N. Vitaliano, J.), entered January 4, 2012, adjudging him guilty upon jury verdict of conspiracy to interfere with commerce by robbery, interference with commerce by robbery (four counts) and use of a firearm during a crime of violence (two counts), and sentencing him to an aggregate prison term of 528 months. The defendant is serving his sentence. The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and appellant appeals as of right pursuant to 28 U.S.C. § 1291.

## **QUESTIONS PRESENTED**

1.      Did the district court err in admitting prior consistent statements by two cooperating witnesses, despite the fact that these statements were made at a time when they had the same motive to fabricate that they did at the time of their trial testimony?

2.      Was the district court's sentence procedurally unreasonable due to its incorrect finding that the Sentencing Guideline level merged with the statutory maximum?

3.      Did the district court plainly err in determining that the victims of two robberies suffered "serious bodily injury" within the meaning of the Guidelines

simply because their injuries required stitches?

    4.      Was the district court's sentence substantively unreasonable?

Defendant submits that the answer to each of these questions is "yes."

## STATEMENT OF FACTS

This appeal arises from a Hobbs Act robbery investigation involving several Autozone and R&S Strauss Discount Auto stores in Brooklyn. It was alleged that defendant Guerino, along with Jermel Perineau, Devon Johnson and other members of the "Gangsta Disciples" gang, conducted armed robberies of these stores between August 2008 and January 2009. The Government's theory was that Mr. Guerino, who had previously worked at Autozone and Strauss and whose younger brother was allegedly a Gangsta Disciple, recruited members of the gang to make the initial entry into the stores, and that in most cases he would enter and crack the safes once the employees had been subdued. The Government alleged that Mr. Guerino used inside knowledge to instruct Perineau and Johnson concerning where the money would be and which employees had the safe keys.

In a 10-count superseding indictment lodged on September 16, 2009 (A.16-22), Mr. Guerino was charged as follows:

| Count | Charge | Date(s) | Place(s) |
|-------|--------|---------|----------|
| 1 | Hobbs Act Conspiracy | August 13, 2008 to January 8, 2009 | E.D.N.Y. and elsewhere |
| 2 | Hobbs Act Robbery | August 13, 2008 | Autozone at 1590 Ralph Avenue |

2

| 3 | Hobbs Act Robbery | August 14, 2008 | Autozone at 575 Utica Avenue |
| 4 | Hobbs Act Robbery | November 22, 2008 | Strauss at 2686 Atlantic Avenue |
| 5 | Hobbs Act Robbery | December 10, 2008 | Autozone at 1455 86th Street |
| 6 | Unlawful Use of a Firearm | December 10, 2008 | Autozone at 1455 86th Street |
| 7 | Hobbs Act Robbery | December 18, 2008 | Strauss at 1756 86th Street |
| 8 | Hobbs Act Robbery | December 22, 2008 | Autozone at 975 Atlantic Avenue |
| 9 | Hobbs Act Robbery | January 8, 2009 | Autozone at 575 Utica Avenue |
| 10 | Unlawful Use of a Firearm | January 8, 2009 | Autozone at 575 Utica Avenue |

At the conclusion of trial, Mr. Guerino was acquitted of Counts Two, Three and Seven – i.e., the first two alleged Autozone robberies and the 86th Street Strauss robbery – but convicted on all other counts. (A.903-04).

**A. The Trial.**

The Government's case at trial included three categories of witnesses: employees of Autozone, Strauss and Papa John's (which was the scene of an uncharged robbery that allegedly occurred during the period set forth in the indictment); law enforcement officers; and cooperators.

The employee witnesses included the Autozone and Strauss loss prevention managers who testified as to the losses from the robberies and the structure and security of the stores, as well as employees and managers who were present at the

time of the charged and uncharged robberies and gave their accounts of what happened to them. Notably, none of these witnesses identified Mr. Guerino as one of the robbers.

In addition, several of the employee witnesses gave testimony that was at odds with the Government's theory that the robbers had inside knowledge supplied by Mr. Guerino. For instance, although it was undisputed that Autozone managers wore gray shirts while non-supervisory employees wore white shirts and that only the gray-shirted managers had safe keys (A.135, 371, 620), several red-shirted employees testified that the robbers demanded keys from them (A.135, 371-73, 378-79, 578), which was acknowledged to be something that a person with inside knowledge would not do (A.135-36).

In addition, Mohamed Yasin, who worked at the very Autozone where Mr. Guerino had once worked and knew him well through three months of acquaintance (A.571-72, 576-77), testified that he was not blindfolded and there was nothing preventing him from looking at the robbers other than someone telling him not to look (A.580), even though he would be able to identify Mr. Guerino from his walk (A.578).

Jeanwilio St. Fleur, who also knew Mr. Guerino (A.585), did not testify to seeing him or hearing his voice, and likewise testified that he was asked for the safe combination (A.593) even though assistant managers at Papa John's, where he

worked, did not have the combination or the capability of opening the safe (A.601). Notably, that procedure had existed as long as Mr. St. Fleur worked at Papa John's. (A.602).

The law enforcement witnesses adduced evidence of a search of Mr. Guerino's SUV that yielded, *inter alia*, a box of white latex gloves, a nylon stocking and a name tag from his former Autozone employment (A.680-82), as well as cell phone calls between him and cooperating witnesses Jermel Perineau and Devon Johnson (A.682-89). As pointed out by defense counsel, however, there were no fingerprints, hair, fibers, DNA or other forensic evidence tying him to the robbery sites. (A.757).

In light of the paucity and highly circumstantial nature of the outside evidence linking Mr. Guerino to the charged offenses, the Government's proof perforce hinged on the third category of witness: cooperators Perineau and Johnson. Both of these witnesses were long-time gang members with extensive histories of violent crime.

Perineau, for instance, acknowledged that he was a member of the Crips, the Nike Crew and the Gangsta Disciples who had run away from home to live on the streets. (A.151-54). His crimes, which began at age 12, included car theft, robbing school kids, shoplifting, hitting someone in the head with a hammer and robbing him, burglary of his neighbors, engaging in gang fights, selling crack, and taking

5

part in a shooting incident in which a bystander in a wheelchair was wounded. (A.154-56, 158, 162-65, 168-77). Johnson, who was also a Gangsta Disciple, testified that he quit school after ninth grade to stay home, watch TV and smoke weed, and that he too had got into many gang fights, forcibly stolen a purse from a teacher, and committed assault and robbery before ever meeting defendant Guerino. (A.384-89). Both said that they got to know Mr. Guerino through his younger brother Eric, who was the chief of the Gangsta Disciples.

The two, who were incarcerated together for several months (A.314), gave broadly similar accounts of the alleged robberies, namely that Mr. Guerino, who had formerly worked at Autozone, Strauss and Papa John's, would pick the stores to rob, following which they would go in with guns, subdue the employees and get keys to open the safe. At that point, in the majority of cases, Mr. Guerino would come in and crack open the deposit box that was inside the safe and to which only the armored car company had the key. He would not come in until the employees had been subdued, to eliminate the risk that they might recognize him from the time he worked at the stores. (A.180-81, 187-94, 396-401, 407-09).

They testified to pulling off the charged robberies as well as another uncharged Autozone robbery and the Papa John's robbery, sometimes with Mr. Guerino only and sometimes with Ronald Britton (another Gangsta Disciple) or other gang members.

At some points, however, their testimony became caught in contradictions. Perineau, for instance, acknowledged that he asked red-shirted employees for access to the safe despite claiming to know that they didn't have such access (A.303). He also stated that, when shown still photos from the surveillance footage, he identified his fellow participant as Mr. Guerino's brother John rather than Mr. Guerino himself. (A.304-05). This was despite the fact that John looked much different from Mr. Guerino, in that he was "very, very short" and less bulky. (A.306).

In addition, Perineau gave a totally incredible account of the alleged August 13, 2008 robbery, claiming that Mr. Guerino went and spoke to the manager, who he knew, "and asked him to play along with the robbery" but when the manager refused, went ahead with the robbery anyway. (A.198-200). Obviously, someone who walks up to a person who knows him and asks him to go along with a robbery, would be asking to be caught if he then went ahead and committed the crime.

Following Perineau's direct testimony, the Government sought to admit his post-arrest statements to the police as prior consistent statements under Fed. R. Evid. 801(d)(1)(B) to rebut claims of recent fabrication. Over the defendant's vigorous objection, the court allowed these statements into evidence. (A.338-45). The Government further offered into evidence statements that Devon Johnson had made to the police after his arrest, to which the defendant did not object "[g]iven

your Honor's past ruling." (A.448). In other words, the defendant did not acquiesce in the admission of the Johnson statements but merely acknowledged that the court had already ruled on the issue.

Upon redirect, however, Perineau acknowledged that even in his post-arrest statements, he did not identify Mr. Guerino as a participant in the August 13 or 14, 2008 robberies. (A.351-52, 355-57).

The defense case consisted of two witnesses who testified to defendant's activities in the community: namely, an SUV club entitled "New York's Most Wanted" that sponsored programs in the neighborhood and a volunteer ambulance company where he was a regular driver. (A.695-715). The witness from the ambulance company testified that, as part of his volunteer work, Mr. Guerino would be issued and would wear latex gloves. (A.711).

After summations, charge and deliberations, the jury convicted defendant of Counts One, Four, Five, Six, Eight, Nine and Ten but acquitted him on Counts Two, Three and Seven. (A.903-04). Notably, Counts Two and Three related to the robberies for which cooperators Perineau and Johnson had declined to identify Mr. Guerino as a participant in their initial statements to the police. Additionally, the jury returned special verdicts with respect to Counts Six and Ten – the 924(c) charges – finding that firearms were brandished during each of the robberies at issue. (A.903-04).

**B.     Sentencing.**

After the jury verdict, the Probation Department prepared a presentence investigation report ("PSR") with respect to Mr. Guerino.  The PSR assigned Guideline scores to each of the robberies charged in the indictment, including the three of which Mr. Guerino was acquitted.[1]  As to each robbery, the Probation Department applied a base offense level of 20, together with enhancements for financial loss, physical restraint and bodily injury where applicable, enhancements of 5 or 6 levels depending on whether the guns used in each robbery were carried or used,[2] and a two-level organizer/leader enhancement.  See PSR, ¶¶ 21-28, 55-117.  In two instances, the Probation Department recommended that an enhancement for *serious* bodily injury be imposed because victims of the offense required a few stitches.  See id., ¶¶ 23, 26, 73, 95.  In addition, for the August 13 and 14, 2008 robberies – both of which defendant was acquitted of committing – the PSR applied a further two-level increase for use of a minor.  See id., ¶¶ 21-22, 60, 68.

---

[1] Defendant did not lodge any objection to the use of acquitted conduct in calculating his Guideline score, and acknowledges that this is permissible under current Supreme Court precedent.  However, as discussed in Point III below, the use of acquitted conduct should constitute a mitigating factor at sentencing due to the residual doubt that defendant participated in those robberies.

[2] Pursuant to Application Note 2 to U.S.S.G. § 2K2.4, no gun enhancement was applied for Counts Six or Nine, because the defendant was convicted of separate 18 U.S.C. § 924(c) offenses relating to those counts.  See PSR, ¶¶ 24, 28.

Pursuant to U.S.S.G. § 2K2.4, the PSR specified that the guideline range for the 924(c) offenses was the minimum statutory term of imprisonment.  See id., ¶¶ 118-19.

Application of the grouping rules resulted in a total offense level of 38.  See id., ¶¶ 120-35.  Defendant's criminal history category was found to be II, see id., ¶ 142, resulting in an advisory Guideline range of 262 to 327 months, see id., ¶ 184. The Guideline range was, however, subject to the statutory minimum terms of imprisonment applicable to Counts Six and Ten, which were 7 and 25 years respectively.  See id.

Defendant did not lodge any objections to the PSR.  However, he submitted a sentencing memorandum requesting that the Court impose a sentence of "approximately thirty two years," with the 924(c) sentences running consecutively to a minimal sentence for the robberies.  (A.927-28).  Defendant pointed to the fact that, upon release, he would be deported to Haiti, an impoverished country in which he had not lived since the age of 11 (A.928-29).  He noted further that he had not killed anyone, and was therefore not a member of "the worst or most violent class of defendants in our system" who deserved "a sentence where he will likely die in prison."  (A.929 n.1).

Defendant argued had shown himself to be a dedicated father to his children, one of whom suffered from mild autism, and his wife was in poor health and had

undergone quadruple bypass surgery. (A.930). Additionally, he engaged in considerable charitable and community work, including 36 hours per month as a volunteer ambulance driver as well as eight hours a week as a food pantry volunteer and community outreach and clothing drives for a local SUV club. (A.930-31). His history of regular employment was a further mitigating factor. (A.931). As such, defendant argued that a 32-year sentence – which would result in his release and deportation to Haiti at age 73 – was amply sufficient to satisfy the goals of Section 3553(a). (A.932).

The Government responded with a memorandum requesting that the district court impose a "substantial term of imprisonment on the robbery conviction" over and above the 32-year sentence for the gun charges. (A.934). It contended that, because Mr. Guernio was "the ringleader of his violent armed robbery crew" and that he "preyed on young, poor, inner-city youth" to participate in the robberies, an "incarceratory sentence" on the robbery counts was called for. (A.936).

Defendant appeared for sentencing before the Hon. Eric N. Vitaliano on September 15, 2011. (A.938-63). At this time, the court accepted the PSR's offense level computation. (A.942). Defense counsel reiterated Mr. Guerino's dedication to family and charitable work, pointing to his selfless donations of time, and asked for a minimum sentence in light of the fact that "[i]n 32 years he's going to be an old man and he's going to go back to Haiti, start all over again." (A.943-

11

45).

Defendant addressed the court, stating that he had come to grips with the fact that he faced a substantial terms of imprisonment and apologizing to the victims and the courts as well as his family. (A.946-48). Like his attorney, he argued that he was "not a bad person" outside the charged offenses and that his charitable work and work ethic should merit a sentence at the mandatory minimum. (A.949).

The Government cast doubt on the defendant's motivation to be with his family and argued that, while defendant "seems to have taken some efforts to mold his children, his young boys, into good hard working adults," he also recruited other boys to take part in the robberies. (A.950-52). It argued that "the sentence here should reflect the management, the leadership, the recruitment that the defendant contributed to this crew." (A.952).

The district court then stated that there were things Mr. Guerino had done in his life of which he should be proud. (A.954-55). It went on to state, however, that the offenses of which Mr. Guerino was convicted were extraordinarily serious, and that whenever a firearm is introduced to a crime, there is a risk of death. (A.956). It stated that "serious time is mandated because of the mere presence and use of firearms" and the threat they pose to community welfare and human life. (A.956). It also opined that Mr. Guerino was the "mastermind" of the robberies

and that he "assembled the crew." (A.957).

In terms of the specific sentence to be imposed, the district court noted that its "hands were tied" as to the 32-year mandatory minimum for the gun charges. It then stated that "what was in play is what we do on the other counts and the guideline numbers were… so high, *they actually exceeded the statutory maximum* so, therefore, it came down to the statutory maximum." (A.958) (emphasis added).

The court then proceeded to impose a sentence of 144 months for the Hobbs Act conspiracy and each of the substantive Hobbs Act counts, to run concurrently with each other but consecutive to terms of 7 and 25 years on the 924(c) counts. (A.959-60). This resulted in a total prison term of 528 months or 44 years for a defendant 41 years old at the time of sentencing.

Judgment was subsequently entered pursuant to the conviction and sentence (SA.1-8), and defendant filed a timely notice of appeal (A.964-66). Now, for the reasons set forth below, defendant contends that this Court should vacate his convictions on all counts and remand for a new trial, or alternatively, that his sentence should be vacated and the matter remanded for a *de novo* resentencing.

## POINT I

### IT WAS ERROR TO ADMIT THE PRIOR CONSISTENT STATEMENTS OF JERMEL PERINEAU AND DEVON JOHNSON

Defendant first contends that the district court improperly admitted prior

consistent statements made by cooperating witnesses Jermel Perineau and Devon Johnson soon after their arrest. The Government offered these statements, and the district court admitted them, to rebut claims of recent fabrication made on cross-examination. This was error because the same motive to fabricate that existed at the time of Perineau and Johnson's trial testimony, already existed at the time the post-arrest statements were made.

In Tome v. United States, 513 U.S. 150, 156 (1995), the Supreme Court noted that "[t]he prevailing common-law rule for more than a century before adoption of the Federal Rules of Evidence was that a prior consistent statement introduced to rebut a charge of recent fabrication or improper influence or motive was admissible if the statement had been made before the alleged fabrication, influence, or motive came into being, but it was inadmissible if made afterwards." "The applicable principle is that the prior consistent statement has no relevancy to refute the charge unless the consistent statement was made before the source of the bias, interest, influence or incapacity originated." Id., quoting E. Cleary, McCormick on Evidence, § 49 at 105 (2d ed. 1972).

Moreover, the promulgation of Rule 801(d)(1)(B), which codified the admissibility of prior consistent statements to rebut claims of recent fabrication, did not abolish the common-law rule:

> The Rules do not accord this weighty, nonhearsay status
> to all prior consistent statements. To the contrary,

14

admissibility under the Rules is confined to those statements offered to rebut a charge of "recent fabrication or improper influence or motive," the same phrase used by the Advisory Committee in its description of the "traditiona[l]" common law of evidence, which was the background against which the Rules were drafted. *Prior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited…*

This limitation is instructive, not only to establish the preconditions of admissibility but also to reinforce the significance of the requirement that the consistent statements must have been made before the alleged influence, or motive to fabricate, arose. That is to say, the forms of impeachment within the Rule's coverage are the ones in which the temporal requirement makes the most sense. Impeachment by charging that the testimony is a recent fabrication or results from an improper influence or motive is, as a general matter, capable of direct and forceful refutation through introduction of out-of-court consistent statements that predate the alleged fabrication, influence, or motive. A consistent statement that predates the motive is a square rebuttal of the charge that the testimony was contrived as a consequence of that motive. By contrast, prior consistent statements carry little rebuttal force when most other types of impeachment are involved…

The language of the Rule, in its concentration on rebutting charges of recent fabrication or improper influence or motive to the exclusion of other forms of impeachment, as well as in its use of wording that follows the language of the common-law cases, suggests that it was intended to carry over the common-law premotive rule.

Id. at 157-60 (emphasis added). In other words, "Rule 801(d)(1)(B) embodies the common-law premotive requirement." Id. at 160.

15

In the instant case, Johnson and Perineau had precisely the same motive to falsify at the time of their arrest as they did at the time of trial.  They had just been arrested for serious crimes and were looking at long prison sentences, and therefore – even though they had not yet concluded formal cooperation agreements – had every reason to curry favor with the authorities and put the weight of the crime on another person.  Both of them were habitual criminals who were well acquainted with the criminal justice system, and were thus aware that one way to get a shorter prison term would be to give up another person and paint him as the leader of the scheme.

Courts both within this Circuit and outside have held that post-arrest statements made under similar circumstances cannot be admitted to rebut charges of recent fabrication.   This Court, for instance, has held that a testifying co-defendant's "motive to fabricate arose as soon as she was arrested and, therefore, her statement was inadmissible hearsay."  United States v. Forrester, 60 F.3d 52, 64 (2d Cir. 1995).  The court in United States v. Trujillo, 376 F.3d 593, 611 (6th Cir. 2004), citing United States v. Esparza, 291 F.3d 1052, 1055 (6th Cir. 2002), similarly held that it was "simply not believable to suggest" that alleged co-conspirators of the defendant, a day or two after they were arrested, "did not have a motive to lie… in order to get lenient treatment."  "A motive to fabricate testimony may arise as soon as a [witness] is arrested, not just after a plea bargain is

reached." <u>United States v. Jeffrey</u>, 128 Fed. Appx. 680, 698 (10th Cir. 2005), <u>citing</u> <u>United States v. Moreno</u>, 94 F.3d 1453, 1455 (10th Cir. 1996); <u>see also</u> <u>United</u> <u>States v. Collicott</u>, 92 F.3d 973, 979 (9th Cir.1996) (finding that because a motive to falsify arose once declarant was stopped by law enforcement officers, prior consistent statement was inadmissible).

The court in <u>United States v. Zapata</u>, 356 F. Supp. 2d 323, 328 (S.D.N.Y. 2005), likewise held that a post-arrest statement could not be admitted to rebut a claim of recent fabrication where the declarant's "motive to fabricate at the time he made the prior consistent statement, after his arrest while explaining the crime to the police, was the same" as it would be at trial. In <u>United States v. Awon</u>, 135 F.3d 96, 100 (1st Cir. 1998) and <u>United States v. Albers</u>, 93 F.3d 1469, 1483 (10th Cir. 1996), the courts likewise held that post-arrest statements made by alleged co-conspirators were not admissible under Rule 801(d)(1)(B).

It was thus error to admit the prior consistent statements of witnesses Johnson and Perineau. Nor can this error be dismissed as harmless. It bolstered the testimony of the two witnesses who the Government relied upon to connect Mr. Guerino to the crime – given that none of the victims identified Mr. Guerino as a participant, the Government's case stood or fell on the credibility of the cooperators. And there is more: two of the three counts on which the jury acquitted Mr. Guerino were the ones in which Mr. Perineau's post-arrest

statements did not identify defendant as a participant. It appears that the jury had grave doubts about the cooperators' trial testimony and were unwilling to convict except where that testimony was bolstered by the prior consistent statements. This Court thus cannot have confidence that the outcome of the trial would have been the same without the erroneous admission of the post-arrest declarations, and a new trial is required on all counts.

## POINT II

**THE SENTENCE WAS PROCEDURALLY UNREASONABLE BECAUSE THE DISTRICT COURT ERRONEOUSLY FOUND THAT THE ADVISORY GUIDELINE RANGE MERGED WITH THE STATUTORY MAXIMUM**

Second, assuming *arguendo* that this Court declines to reverse defendant's conviction on the ground set forth in Point I, it is submitted that his sentence was procedurally unreasonable because the district court improperly found that the advisory sentencing range under the Sentencing Guidelines merged with and was superseded by the statutory maximum.

It is by now well settled that reasonableness review of a sentence has two components: procedural and substantive. See United States v. Crosby, 397 F.3d 103, 114 (2d Cir. 2005); United States v. Rattoballi, 452 F.3d 127, 131-32 (2d Cir. 2006). Procedural reasonableness relates to "procedures used to arrive at the sentence." United States v. Sanchez, 517 F.3d 651, 660 (2d Cir. 2008). Notably,

although the Sentencing Guidelines are no longer mandatory, a sentence is procedurally unreasonable if the Guidelines are not properly calculated. Id. at 661; United States v. Cavera, 550 F.3d 180, 190 (2d Cir. 2010).

Under this standard, the district court's sentence suffered from a fatal procedural flaw. In particular, the court determined that the Sentencing Guideline level was so high that it exceeded and merged with the statutory maximum. (A.958). In fact, precisely the opposite was the case. The advisory sentencing range was 262 to 327 months, which was not only less than the maximum sentence he faced but was less than the mandatory *minimum* term that was required by defendant's two 924(c) convictions. It was thus the minimum sentence, rather than the maximum, that merged with the Guidelines.

Although this finding by the district court did not affect the point scoring in the PSR, it was nevertheless a Guideline calculation error. "Where, as here, the statutory minimum sentence of imprisonment exceeds the span of months of imprisonment encompassed within the range… identified [by the sentencing table], the minimum sentence becomes the Guidelines sentence." United States v. Richardson, 521 F.3d 149, 158 n.2 (2d Cir. 2008). The same is true where the guideline level exceeds the statutory maximum: i.e., the maximum becomes the Guideline sentence. See United States v. Chinnici, 305 Fed. Appx. 813, 815 (2d Cir. 2009), citing U.S.S.G. § 5G1.1(a). Thus, by stating that the Guideline range

19

exceeded the statutory maximum, the district court determined that, regardless of the point scoring, the maximum sentence was mandated by the Guidelines, and anything less than the maximum would effectively be a windfall for Mr. Guerino.

Nor can this error be dismissed as harmless. On appeal, the Government bears the burden of showing the harmlessness of any sentencing error. United States v. Lake, 419 F.3d 111, 113 (2d Cir. 2005). It is a "rare" case in which this Court "can confidently say that a sentencing error was harmless." Id. Even where this Court "cannot say that it is likely" that the sentencing court would impose a different sentence, a remand is necessary unless the Government shows that the "possibility is so remote" as to moot out the distorting effect of error. Id.; accord United States v. Fuller, 426 F.3d 556, 557-58 (2d Cir. 2006) (finding that remand of pre-Booker sentence was required even though the sentencing judge imposed a detailed "alternative" sentence that assumed the Guidelines were not mandatory). Here, where the district court's error occurred during the very imposition of sentence rather than some earlier point in the sentencing colloquy when housekeeping matters were under discussion, it clearly played a part in the district court's thinking about what sentence to impose, and there is thus a far more than "remote" possibility that it affected the outcome.

Defendant recognizes that no objection was made to this statement by the district court. However, it is settled that this Court will relax the plain error

standard for many sentencing errors. <u>United States v. Williams</u>, 399 F.3d 450, 456 (2d Cir. 2005) (review of unpreserved sentencing errors is less rigorous because "the cost of correcting a sentencing error is far less than the cost of a retrial"). For instance, this Court has reviewed a sentencing challenge "without insisting on strict compliance with the rigorous standards of Rule 52(b)" where the ruling on appeal "was not recommended in the PSR, and [the defendant] had no prior knowledge that it would be imposed." <u>United States v. Sofsky</u>, 287 F.3d 122, 125-26 (2d Cir. 2002); <u>accord</u> <u>United States v. Reeves</u>, 591 F.3d 77, 80 (2d Cir. 2010).

Here, likewise, the PSR did not recommend that the district court treat the maximum sentence as the Guideline sentence, and defendant had no notice that it would do so until it made the above-cited statement nearly at the end of the sentencing colloquy. Therefore, this Court should review this error without regard to the plain-error standard and find that a remand for resentencing is required.

Alternatively, assuming *arguendo* that the plain-error standard applies, this Court should find that it was met. Plain error is "(1) error, (2) that is plain, and (3) that affects substantial rights." <u>United States v. Cotton</u>, 535 U.S. 625, 631-32 (2002). If these standards are satisfied, this Court may correct the error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." <u>Id.</u>; <u>United States v. Lewis</u>, 424 F.3d 239, 247 (2d Cir. 2005).

Here, for the reasons set forth *supra*, the district court's merger of the

statutory maximum and the Guideline level was error, and that error was plain: indeed, the error did not require resort to case law to discern, but was plain from a simple comparison of the advisory Guideline range to the statutory maximum sentence (up to life on the 924(c) counts and a further aggregate 100 years on the Hobbs Act conspiracy and substantive Hobbs Act counts). Moreover, it affected defendant's substantial rights, and seriously affected the fairness and integrity of the judicial proceedings, because, as stated above, it clearly played a part in the district court's determination that a substantial consecutive sentence over and above the 32-year minimum was necessary to meet the ends of justice. Again, the fact that the district court mentioned the erroneous merger of the Guideline level and the statutory maximum during its actual pronouncement of sentence indicates that it loomed large in the court's thinking. Therefore, the error likely resulted in defendant serving a substantially longer prison term than would otherwise have been imposed, see Cotton, 535 U.S. at 632 (error affects substantial rights if it affects the outcome of the district court proceedings), and should be redressed by this Court with a remand for resentencing.

## POINT III

### THE IMPOSITION OF "SERIOUS BODILY INJURY" ENHANCEMENTS FOR COUNTS FOUR AND EIGHT WAS PLAIN ERROR

Defendant also contends that the sentence was procedurally unreasonable

22

due to the erroneous imposition of "serious bodily injury" enhancements as to Counts Four and Eight. The sole basis for this enhancement was that, in each robbery, the victim required stitches. The PSR provides little if any further detail: as to the November 22, 2008 robbery underlying Count Four, it states simply that an employee was struck with a gun and required an unknown number of stitches, while the victim of the December 22, 2008 robbery underlying Count Eight was struck in the head and "started to bleed," ultimately requiring seven stitches. See PSR, ¶¶ 12, 15. There is no indication that either employee required surgery or hospitalization, or that there were any protracted or life-threatening consequences. As such, while their injuries did rise to the level of "bodily injury," it did not constitute *serious* bodily injury as that term is defined in the Guidelines.

Pursuant to Application Note 1 to U.S.S.G. § 2B3.1, the term "serious bodily injury" is defined in the commentary to U.S.S.G. § 1B1.1. That commentary, in turn, defines serious bodily injury to include (a) sexual abuse, or (b) "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." See U.S.S.G. § 1B1.1, Application Note 1(L). This is in contrast to "bodily injury," which is "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." Id., Application Note 1(B).

23

In this case, there is nothing in the record to indicate that either employee suffered "extreme" physical pain; indeed, both employees testified, and neither stated that the pain he suffered was extreme or described it in any other superlative term. Nor did either employee suffer protracted impairment of any bodily function or require medical intervention equivalent to surgery or hospitalization.

The absence of serious bodily injury in this case is clear by comparison to United States v. Egbert, 562 F.3d 1092, 1101-02 (10th Cir. 2009), which held that two beatings involving many punches and kicks, one of which resulted in temporary unconsciousness, *did not* rise to the level of serious bodily injury. The court noted that "[c]ases from this and other circuits upholding serious bodily injury enhancements involve substantially more evidence of serious injury requiring medical treatment than the evidence presented here." Id. at 1101-02 (collecting cases). If even the serious beatings at issue in Egbert did not constitute serious bodily injury, then an injury requiring a few stitches – while certainly not to be trivialized – certainly does not rise to that level.

In United States v. Tavares, 93 F.3d 10 (1st Cir. 1996), the First Circuit likewise opined that stitches in and of themselves do not make out a serious bodily injury:

> Depending on context, an inch long laceration requiring eight stitches might or might not constitute serious bodily injury. For example, if there was a great deal of blood loss, or the victim was a hemophiliac, such an injury

24

> might well be thought serious. More generally, we cannot say that the victim's injury in this case is of a *kind* that would *categorically* call for its characterization as "serious" or not. Lacerations can be life-threatening or trivial; where on the sliding scale of severity a particular laceration falls is not a determination that can be made solely as a matter of law.

Id. at 16 (emphasis in original). Finding nothing in the record that would mandate a finding of serious bodily injury, the court vacated the sentence and remanded for further fact-finding. Id.; see also United States v. Dortch, 628 F.3d 923, 926 (7th Cir. 2010) (finding that injury requiring 16 stitches was "bodily injury" in contrast to alleged serious bodily injury caused by hospitalization for smoke inhalation, which the record did not support).[3]

The record in this case does not reveal that either employee suffered "a great deal of blood loss" or was a hemophiliac. Instead, the only ground cited by the PSR for the enhancement was the stitches themselves, based evidently upon the Probation Department's belief that any injury requiring stitches is categorically a serious bodily injury. But as stated in Tavares, such an injury *does not* categorically support the enhancement – and given that nothing else was offered in support of it, its application in this case was error.

Defendant acknowledges that no objection was made to the serious bodily

---

[3] To be distinguished are cases such as United States v. Blackman, 370 Fed. Appx. 860, 861 (9th Cir. 2010) where the victim suffered a broken nose and permanent disfigurement in addition to requiring stitches and where there was medical testimony as to the extreme nature of her pain.

injury enhancement. However, as discussed in Point II above, he submits that this Court should relax the plain error standard because the error was made in the sentencing context rather than at trial. Alternatively, as also stated in Point II, this Court should find plain error because the erroneous imposition of the enhancement was plain in light of the text of the U.S.S.B. § 1B1.1 application notes and the pertinent case law; it affected defendant's Sentencing Guideline level and hence his substantial rights; and it affected the fairness and integrity of the instant judicial proceedings by playing a part in inducing the sentencing court to impose an extraordinarily long, 44-year prison term. Therefore, this Court should find that a remand for resentencing is required.

**POINT IV**

**THE DISTRICT COURT'S SENTENCE WAS SUBSTANTIVELY UNREASONABLE**

Finally, defendant contends that, in the wake of United States v. Booker, 543 U.S. 220, 749-50 (2005), the district court's sentence must be vacated as substantively unreasonable. In Booker, as this Court is well aware, the Supreme Court held that the Sentencing Guidelines are advisory rather than mandatory, and that sentencing courts are obligated to consider the seven factors set forth in 18 U.S.C. § 3553(a). Moreover, the sentence "shall be sufficient, *but not greater than necessary*, to comply with [these] purposes." 18 U.S.C. § 3553(a) (emphasis added); see also Gall v. United States, 128 S. Ct. 586, 596 n.6 (2007)

26

(characterizing Section 3553(a)'s parsimony clause as a "general directive");
United States v. Sanchez, 517 F.3d 651, 660-61 (2d Cir. 2008).

Post-Booker sentences are reviewable on appeal for reasonableness. See
Booker, 543 U.S. at 751. In United States v. Crosby, 397 F.3d 103, 117 (2d Cir.
2005), as noted above, this Court held that reasonableness has both procedural and
substantive components, with the former relating to the process by which the
sentence is reached and the latter involving a comparison of its length to the goals
of Section 3553(a). See id. at 117.

Significantly, this Court has explicitly declined to hold that sentences within
the Guideline range enjoy any presumption of reasonableness, and in United States
v. Fernandez, 443 F.3d 19, 28 (2d Cir. 2006), reaffirmed its rejection of the
principle that "a Guideline sentence, without more, is presumptively reasonable."
Instead, the Fernandez court reaffirmed the importance of individual consideration
of each sentence to determine whether it is reasonable under the facts of the case.
 See id. at 27-28; see also United States v. Rattoballi, 452 F.3d 127, 132 (2d Cir.
2006) (reasonableness review "is not a rubber stamp" and "is a concept that implies
boundaries"). Moreover, the Rattoballi court reiterated that the reason for
declining to impose a presumption of reasonableness upon Guideline sentences is
that "the guidelines *are still generalizations* that can point to outcomes that may be
unreasonable... in particular cases." Id. at 133 (emphasis added), citing United

States v. Jimenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc).

Thus, it is settled law in this Circuit that a Guideline sentence – or indeed, even a below-Guideline sentence such as was imposed here – may be substantively unreasonable under the circumstances of a specific case. In other words, a defendant may obtain reversal by showing that his sentence would be unreasonably high in light of the totality of the circumstances. See United States v. Sanchez-Juarez, 446 F.3d 1109, 1113-14 (10th Cir. 2006) (collecting cases); see also United States v. Cirilo-Munoz, 504 F.3d 106 (1st Cir. 2007). Defendant submits that, for the reasons detailed below, he has proven exactly that, and this Court should vacate his sentence as substantively unreasonable.

Moreover, although Gall and Kimbrough v. United States, 128 S. Ct. 558 (2007) held that district court sentences are to be reviewed deferentially, neither case eliminated substantive reasonableness review, and this Court continues to have a robust role in ensuring that Federal sentences reflect a proper balancing of the Section 3553(a) factors. See, e.g., Sanchez, 517 F.3d at 660-61.

In the instant case, defendant submits that imposition of a Guideline sentence was greater than necessary to meet the purposes of Section 3553(a). Defendant acknowledges that the offenses of which he was convicted are very serious violent crimes and, as such, demand severe punishment. But 32 years in prison – a full generation, long enough to turn a newborn infant into a parent with a

28

medical degree or an entry-level worker into a senior manager looking forward to retirement – is surely severe enough. This is an enormous length of time, verging on half a human lifetime, and is a greater punishment than even many murderers suffer. Moreover, by the time defendant finishes a 32-year sentence, he will be in his late sixties, and will have long since aged out of the population for whom recidivism is a serious risk.

Indeed, even a 32-year sentence is quite possibly excessive for this offense, albeit mandated by statute. If not for the 924(c) convictions, the Guidelines would have recommended a sentence of approximately 22 to 27 years. As a respected Judge of the Eastern District of New York and former Federal prosecutor recently stated, the "stacking" of two or more 924(c) sentences resulting from the same indictment results in Draconian sentences which "the Sentencing Commission has since asked Congress to eliminate because it is so unjust." Holloway v. United States, 2014 WL 1942923, *1 (E.D.N.Y. 2014). "The onerous enhancement in § 924(c)(1)(c) for 'second or subsequent conviction [s]' under § 924(c) masquerades as a recidivism enhancement, but when the 'second or subsequent' conviction occurs in the very same case as the first one, as they did here, the result is frequently a manifestly unjust mandatory sentence with a disparate impact on black men." Id., *2. Indeed, in a robbery case not unlike this one, the Holloway court observed that "sentencing data suggest that Holloway would have fared much

29

better if he had committed first degree murder instead of robbing three cars." Id., *1.

Here, the stacking of 924(c) counts has likewise resulted in Mr. Guerino facing a mandatory minimum sentence exceeding that imposed on many murderers. While this Court is powerless to redress that stacking other than by reversing the conviction, it can and should certainly hold that anything *more* than the minimum stacked sentence – i.e., 32 years – is excessive and unjust.

Several other factors also compel this conclusion. As noted in the sentencing memorandum, the defendant was a very charitable person, and his good works in the community did not consist simply of writing checks. Instead, he volunteered time amounting to 36 hours a month as an ambulance driver and eight hours a week at a food pantry – essentially two full days a week of volunteer work on top of his employment. In addition, there is no dispute that Mr. Guerino was and is devoted to his family, and even the Government acknowledged that he raised his children well – a testament that is shown, *inter alia*, by the fact that he took his sons to volunteer with him at the food pantry. (A.931). His youngest son, who has mild autism, and his wife who is in poor health, are in need of his guidance and care.

Furthermore, defendant will face deportation to Haiti, a country he has not seen since age 11, when he is released from prison – a consequence that will

30

separate him from his family even more definitively than incarceration and will add immeasurably to what he will suffer as a result of these crimes.  See United States v. Thavaraja, 740 F.3d 253, 263 (2d Cir. 2014) ("a district court may take into account the uncertainties presented by the prospect of removal proceedings and the impact deportation will have on the defendant and his family").

This Court should also note that three of the robberies included in the Guideline calculation, and presumably considered by the district court in determining the penalty, are crimes of which Mr. Guerino was acquitted. Defendant acknowledges that current Supreme Court precedent permits the use of acquitted conduct at sentencing; however, at the very least, the jury's resolution of those allegations evinces a residual doubt as to whether defendant in fact committed the robberies with which they are associated.  It is well recognized that, even where a defendant has been convicted, the existence of "residual doubt" is a valid mitigating factor.  See, e.g., United States v. Davis, 132 F. Supp. 2d 455 (E.D. La. 2001); United States v. Honken, 378 F. Supp. 2d 1040 (N.D. Ia. 2004). Surely this is all the more true as to offenses of which a defendant has been acquitted, and warrants extreme caution when imposing a sentence greater than the already Draconian mandatory minimum.

Finally, while defendant acknowledges the district court's determination that he was a "ringleader" and that he recruited others to join the robbery scheme, this

does not justify a sentence longer than 32 years. In particular, defendant takes issue with the Government's contention that he "preyed on" the people he allegedly recruited. As the trial evidence overwhelmingly showed, Jermel Perineau, Devon Johnson and the other Gangsta Disciples who took part in the robberies were not innocents who Mr. Guerino led astray. They were, instead, people who were members of a violent gang long before they met the defendant and who had become habituated to serious crime, including robbery and use of firearms, beginning in junior high school. Defendant cannot in the least be held responsible for corrupting them – by all appearances, they were willing and eager participants who would no doubt have found other crimes to commit had they not become involved with the scheme charged in this indictment.

In sum, 32 years – which, as stated above, is itself an extraordinarily severe sentence – is sufficient to provide just punishment for these serious crimes, promote respect for the law, provide for specific and general deterrence, and meet all the other goals of Section 3553(a). An additional 12 years on top of that, which is a *de facto* life sentence for a defendant Mr. Guerino's age, is plainly excessive. A person convicted of the crimes of which Mr. Guerino was convicted deserves severe punishment, but does not deserve to be treated worse than a murderer or to die in prison. This Court should therefore vacate the sentence and remand for imposition of the statutory minimum sentence of 32 years.

## <u>CONCLUSION</u>

In light of the foregoing, this Court should grant the instant appeal, vacate the appellant's conviction or alternatively his sentence, and remand for further proceedings consistent with its mandate.

Dated:    New York, NY
              November 26, 2014

<u>/s/ Jonathan I. Edelstein</u>
JONATHAN I. EDELSTEIN

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

The undersigned hereby certifies pursuant to Fed. R. App. Pro. 32(a)(7)(C) as follows:

1.    This brief complies with the type-volume limitation of Fed. R. App. Pro. 32(a)(7)(B) because it contains 7,648 words exclusive of those parts of the brief exempted by Fed. R. App. Pro. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. Pro. 32(a)(5) and the type style requirements of Fed. R. App. Pro. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Corel Word Perfect 12 in Times New Roman 14-point type.

Dated:      New York, NY
            November 26, 2014

                                        /s/ Jonathan I. Edelstein____
                                        JONATHAN I. EDELSTEIN

-34-

**Special Appendix**

i

**SPECIAL APPENDIX**
**TABLE OF CONTENTS**

**Page**

Judgment, dated December 30, 2011 ......................... SPA-1

SPA-1

AO 245B
(Rev. 09/11) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

### Eastern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br>**v.**<br>Guerino Joseph | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**JUDGMENT IN A CRIMINAL CASE**

Case Number:   09cr362 s-1(ENV)

USM Number:   77536-053

Gary Villanueva, 11 Park Place, NY, NY 10007
_____
Defendant's Attorney

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☑ was found guilty on count(s)   1,4,5,6,8,9 & 10
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| | SEE PAGE 2 | | |

The defendant is sentenced as provided in pages 2 through ___8___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

9/15/2011
_____
Date of Imposition of Judgment

s/ENV
_____
Signature of Judge

Eric N. Vitaliano                    U.S.D.J.
_____
Name and Title of Judge

DEC 3 0 2011     12/30/2011
_____
Date

SPA-2

AO 245B   (Rev. 09/11) Judgment in a Criminal Case
Sheet 1A

Judgment—Page __2__ of __8__

DEFENDANT:  Guerino Joseph
CASE NUMBER:  09cr362 s-1(ENV)

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18:1951(a) | Conspiracy to Interfere with Commerce by Robbery | 8/19/2009 | 1 |
| 18:1951(a) | Interference with Commerce by Robbery | 8/19/2009 | 4 |
| 18:1951(a) | Interference with Commerce by Robbery | 8/19/2009 | 5 |
| 18:924(c)(1)(A)(ii) | Use of Firearm During a Crime of Violence | 8/19/2009 | 6 |
| 18:1951(a) | Interference with Commerce by Robbery | 8/19/2009 | 8 |
| 18:1951(a) | Interference with Commerce by Robbery | 8/19/2009 | 9 |
| 18:924(c)(1)(C)(i) | Use of Firearm During a Crime of Violence | 8/19/2009 | 10 |

SPA-3

AO 245B     (Rev. 09/11) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page ___3___ of ___8___

DEFENDANT:  Guerino Joseph
CASE NUMBER:  09cr362 s-1(ENV)

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

- 144 (One Hundred Forty-Four) Months on counts 1,4,5,8 & 9. Each count to run concurrently.
- 7 (Seven) Years on Count Six to run consecutively to counts 1,4,5,8 & 9.
- 25 (Twenty-Five Years) on Counts 10. The sentence on Count 10 is to run consecutively to Counts 1,4,5,6,8 & 9.

☐  The court makes the following recommendations to the Bureau of Prisons:

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

   ☐  at _____  ☐ a.m.  ☐ p.m.  on _____.

   ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐  before 2 p.m. on _____.

   ☐  as notified by the United States Marshal.

   ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

SPA-4

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 3 — Supervised Release

| | Judgment—Page | 4 | of | 8 |

DEFENDANT: Guerino Joseph
CASE NUMBER:  09cr362 s-1(ENV)

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

SEE NEXT PAGE

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check, if applicable.)*

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  *(Check, if applicable.)*

☐ The defendant shall cooperate in the collection of DNA as directed by the probation officer.  *(Check, if applicable.)*

☐ The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense.  *(Check, if applicable.)*

☐ The defendant shall participate in an approved program for domestic violence.  *(Check, if applicable.)*

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

SPA-5

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
           Sheet 3A — Supervised Release

Judgment—Page ___5___ of ___8___

DEFENDANT:  Guerino Joseph
CASE NUMBER:  09cr362 s-1(ENV)

## ADDITIONAL SUPERVISED RELEASE TERMS

Three Years on counts 1,4,5,8 & 9.  Five Years on count 6.  Five Years on Counts 10.
- Supervised Release terms imposed in each count are to run concurrently for a total of 5 years of supervised release.

SPA-6

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page  6  of  8

DEFENDANT:  Guerino Joseph
CASE NUMBER:  09cr362 s-1(ENV)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $ 700.00 | $ 0.00 | $ 68,450.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Auto Zone, 1590 Ralph Ave., Brooklyn, NY | $2,000.00 | $2,000.00 | |
| Strauss Disc. Auto, 2686 Atlantic Ave., Brooklyn, NY | $17,000.00 | $17,000.00 | |
| Auto Zone, 1455 86th St., Brooklyn, NY | $8,000.00 | $8,000.00 | |
| R&S Strauss Auto, 1756 86th St., Brooklyn, NY | $2,300.00 | $2,300.00 | |
| Auto Zone, 975 Atlantic Ave., Brooklyn, NY | $2,000.00 | $2,000.00 | |
| **TOTALS** | $  68,450.00 | $  68,450.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

   ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

SPA-7

Judgment—Page **7** of **8**

DEFENDANT:  Guerino Joseph
CASE NUMBER:  09cr362 s-1(ENV)

## ADDITIONAL RESTITUTION PAYEES

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Auto Zone, 155-05 Northern Blvd., Queens, NY | $2,500.00 | $2,500.00 | |
| Auto Zone, 575 Utica Ave., Brooklyn, NY | $15,000.00 | $15,000.00 | |
| Sheldon Anglin, 134-15 166th Pl., Jamaica, NY 11434 | $560.00 | $560.00 | |
| Abdu Lawrence, 1306 E.48th St., Brooklyn, NY 11234 | $650.00 | $650.00 | |
| Plye Owen,1261 Union St, Apt13, Brooklyn,NY 11225 | $500.00 | $500.00 | |
| Other Identified Victims (Probation has a list of other victims that have yet to file affidavits) | $17,940.00 | $17,940.00 | |

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

SPA-8

AG 245B     (Rev. 09/08 Judgment in a Criminal Case)
Sheet 6 — Schedule of Payments

Judgment — Page   __8__   of   __8__

DEFENDANT:  Guerino Joseph
CASE NUMBER:  09cr362 s-1(ENV)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☐  Lump sum payment of $ _____ due immediately, balance due

☐  not later than _____ , or
☐  in accordance  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

**B**  ☑  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☑ F below); or

**C**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☑  Special instructions regarding the payment of criminal monetary penalties:

Special Assessment fee of $700.00 is due immediately. Restitution on Counts 1,4,5,6,8,9 & 10 is due immediately upon entry of restitution order and payable at a rate of $25 per quarter while in custody and 10% of net disposable income per month while on supervised release. Payment should be submitted to the Clerk of the Court, U.S. District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, NY 11201.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☑  Joint and Several

Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

1:09-cr-00362-ENV-1 Ronald Britton
1:09-cr-00362-ENV-2 Devon Johnson
1:09-cr-00362-ENV-3 Jermel Perineau
1:09-cr-00362-ENV-4 Joseph Guerino

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.